**WOODRIDGE NURSERY SCHOOL,**
Petitioner,

v.

**Theresa G. JESSUP, and District of Colum-**
**bia Unemployment Compensation**
**Board, Respondents.**

No. 5169.

District of Columbia Court of Appeals.

Argued June 16, 1970.

Decided Sept. 25, 1970.

R. Kenneth Mundy, Washington, D. C., for petitioner.

George A. Ross, Washington, D. C., with whom F. G. Gordon, Jr. and Russell L. Carter, Washington, D. C., were on the brief, for respondents.

Before HOOD, Chief Judge, and GALLAGHER and NEBEKER, Associate Judges.

HOOD, Chief Judge:

Respondent Jessup (hereafter referred to as respondent) filed a claim for benefits with respondent District of Columbia Unemployment Compensation Board (hereafter referred to as Board). The claims deputy, after an investigation, determined that respondent voluntarily left her employment without good cause and therefore was disqualified from receiving benefits for a five-week period.[1] Respondent appealed this determination. On November 20, 1969 a full hearing was held by an appeals examiner who affirmed the decision of the claims deputy. Respondent then filed with the Board a four-page letter in which she appealed the decision of the appeals examiner and set forth her disagreement with his findings. Included in the letter was information not adduced at the hearing. Petitioner did not receive notice that respondent had filed an appeal with the Board. Shortly thereafter the Board reversed the decision of the appeals examiner in a short two-sentence resolution:

> RESOLVED: That the decision of the Appeals Examiner dated November 28, 1969 in the above entitled case, be reversed. This action is taken because claimant believed that the employer accepted the offer to terminate her services September 26, 1969 rather than October 10, 1969.

On this appeal petitioner claims several errors only one of which merits discussion: the posthearing procedure followed by the Board.

■ The District of Columbia Administrative Procedure Act (hereafter referred to as the Act) was enacted into law on October 21, 1968.[2] Under the guidance of the Bar Association of the District of Columbia the Act was "designed to meet a longstanding need in the District of Columbia for the improvement of administrative process and the achieving of uniformity and full disclosure of administrative rules and rulemaking procedures of District government agencies comparable to those required of Federal agencies under the Federal Administrative Procedure Act."[3] Accordingly the Act superseded any law or procedure of the Commissioner, the Council and the agencies of the District government which conflicted with its provisions.[4] However, in view of the myriad procedures then followed by the District agencies, the effective date of the Act was postponed until one year from the date of

---

1. D.C.Code 1967, § 46–310(a).

2. Act of October 21, 1968, Pub.L.No. 90–614, 82 Stat. 1204; D.C.Code 1967, § 1–1501 et seq. (1970 Supp.).

3. S.Rep.No.1581, 90th Cong., 2d Sess. 1–2 (1968).

4. D.C.Code 1967, §. 1–1501 (1970 Supp.).

enactment in order to "give the District of Columbia Government a fair time in which to adjust to whatever new procedures would have to be adopted." [5]

 Apparently there is some confusion as to the applicability of the Act to the Board. We wish to lay this matter to rest. The Act is clear: it applies in all "contested cases" where the law requires the Commissioner, the Council or the agency to determine the "legal rights, duties, or privileges of specific parties" after a hearing [6] (the District of Columbia Unemployment Compensation Act requires a hearing) ; [7] and it became effective on October 21, 1969. As of that date the Board and all agencies covered by the Act should have adopted the procedures required by the Act.[8] The one-year grace period was a sufficient period of time for the Board and all agencies covered by the Act to have established the procedures necessary to conform to the requirements of the Act. No further delay is warranted. We therefore remand this case to the Board to await decision after the adoption by the Board of the procedures required by the Act. In so doing we wish to point out several errors in the procedure followed by the Board.

 After the hearing before the appeals examiner, both petitioner and respondent received a copy of the examiner's findings of fact and decision.[9] Respondent then filed an appeal with the Board in the form of a letter but petitioner was not given notice of this appeal. The Act has no provisions concerning the manner of initiating an appeal to those who are to make the final decision and apparently leaves this matter to be dealt with by the acts establishing the agencies. The District of Columbia Unemployment Compensation Act provides that the party aggrieved by the decision of the appeals examiner may file a petition with the Board.[10] The Board certainly could permit the other party to reply to such petition. In any case, even if the Board deemed it unnecessary to permit a reply to the petition for appeal, the other party at least should be given notice that an appeal has been filed. This is in keeping with one of the purposes of the Act: to protect the rights of the parties by insuring fairness in the administrative process. Since the appeals examiner's decision becomes the decision of the Board if it is not appealed,[11] notice that an appeal has been filed with the Board will enable the other party to know whether the appeals examiner's decision is final and he should no longer be concerned with the case or whether he must hold himself in readiness for the remaining steps of the administrative process. Furthermore, the Board should prescribe specifically what information (a form might be helpful) the petition should contain in order to prevent matters finding their way, by letter or otherwise, into the record on appeal before the Board and which matters were not befor the appeals examiner.[12]

 Once the appeal has been filed with the Board and the other party has been

---

5. Hearings on S. 1379 and H.R. 7417 Before the Subcommittee on the Judiciary of the Committee on the District of Columbia, 90th Cong., 2d Sess. 73 (1968).

6. D.C.Code 1967, § 1–1502(8) (1970 Supp.).

7. D.C.Code 1967, § 46–311(b).

8. Apparently the Rules and Regulations of the Board had not been revised since 1962. We understand a revision has been made since this case was argued, but the revision is not before us and we do not pass upon the question whether it complies with the Act.

9. Petitioner does not challenge the pre-henhring procedure or the manner in which the hearing was conducted but we note parenthetically that the provisions in the Act for receiving notice of a hearing and the manner in which a hearing is to be conducted are quite explicit and must be adhered to.

10. D.C.Code 1967, § 46–311(e).

11. Id.

12. See D.C.Code 1967, § 1–1509(c) (1970 Supp.).

given notice of the appeal, and before the Board can render its final decision, the Board must serve upon the parties a proposed decision, including findings of fact and conclusions of law.[13] Each party must be given the opportunity to file exceptions to the proposed decision and to present argument[14] to the Board or to a majority of those who are to render the final decision.[15] It is clear from the record that this procedure was not followed by the Board. Such a procedure prevents the appeal, to those who are to make the final decision, from being a pro forma appeal whereby those who make the final decision merely "rubber stamp" the appeals examiner's decision.

█ The final decision, when rendered, must be in writing and must be "accompanied by findings of fact and conclusions of law."[16] Here the two-sentence decision of the Board is woefully inadequate, by any standard,[17] as a finding of

fact and a conclusion of law. A major reason for requiring findings of fact and conclusions of law is that:

> When a decision is accompanied by findings of fact, the reviewing court can decide whether the decision reached by the court or commission follows as a matter of law from the facts stated as its basis, and also whether the facts so stated have any substantial support in the evidence. In the absence of findings of fact the reviewing tribunal can determine neither of these things. The requirement of findings is thus far from a technicality.[18]

The Board's decision gives this court nothing to review and it would be a vain attempt at effective judicial review were this court to write an opinion based upon the Board's meager statement.

Since we remand this case to the Board to comply with the Act we take no position as to the merits of the case.

Reversed and remanded.

13. D.C.Code 1967, § 1–1509(d) (1970 Supp.).

14. The Act does not require oral argument, but argument either oral or in the form of memoranda or briefs must be allowed.

15. D.C.Code 1967, § 1–1509(d) (1970 Supp.).

16. D.C.Code 1967, § 1–1509(e) (1970 Supp.). The Board could adopt the findings and conclusions of the appeals examiner, but if it does it should specifically do so.

17. The District of Columbia Unemployment Compensation Act itself provides that on an appeal from the Board to the

court, "a copy of all the testimony and of the findings of fact upon which the Board's decision was based shall be filed with the court * * *." D.C.Code 1967, § 46–311(f). Thus even before the Act became effective the Board was required to make findings of fact in order to permit the court to review the Board's decision.

18. Saginaw Broadcasting Co. v. F.C.C., 68 App.D.C. 282, 287, 96 F.2d 554, 559 (1938), cert. denied, 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391. See also Allentuck v. District of Columbia Min. W. & I. Safe. Bd., D.C.App., 261 A.2d 826 (1969).