Helen JOHNSON, Petitioner,

v.

DISTRICT OF COLUMBIA RENTAL
HOUSING COMMISSION,
Respondent.

No. 91–AA–738.

District of Columbia Court of Appeals.

Argued March 23, 1994.

Decided June 2, 1994.

Allison Rutland Soulen, Neighborhood Legal Services Program, Alexandria, VA, with whom H. Antony Cramer, Silver Spring, MD, was on the brief, for petitioner.

Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, for respondent.

Before SCHWELB, FARRELL, and WAGNER, Associate Judges.

FARRELL, Associate Judge:

This petition for review brings before us a decision of the District of Columbia Rental Housing Commission (RHC) which in turn

reversed a decision by an RACD [1] hearing examiner voiding two rent increases implemented by the respondent housing providers (hereafter the "owners"). On the owners' appeal from the RACD decision, the RHC determined that the hearing examiner erred in failing to apply *res judicata* principles which would have resulted in the conclusion that the housing accommodation was exempt from the rent increase restrictions of the Rental Housing Act (the Act),[2] as determined in a prior proceeding involving the same parties. Therefore, the RHC did not reach the owners' contention on the merits that the RACD erred in determining that they operated the rental unit as a partnership and for that reason were not exempt from the Act's coverage. We reverse the RHC's application of *res judicata*, as we hold that the owners failed as a matter of law to establish their preclusion defense in the proceedings before the hearing examiner. We remand to the RHC for consideration of the owners' claim of error by the examiner on the merits.

## I.

### A.

On July 13, 1988, petitioner filed Tenant Petition 21,400 with the RACD, challenging rent increases taken by the owners in 1985 and 1987. After unsuccessful settlement negotiations, the case proceeded to a hearing in September 1988 before RACD examiner Anderson, at which petitioner contended, as relevant here, that (1) the owners' claim of exemption from coverage by the Act was invalid because they owned and operated the housing accommodation in question as a partnership, *see* D.C.Code § 45–2515(a)(3)(A) (1990) (exempting from coverage of the Act a housing accommodation owned by not more than four "natural persons"); *Price v. District of Columbia Rental Hous. Comm'n,* 512 A.2d 263, 267–68 (D.C.1986); and (2) the rent increases were invalid because the rental unit was not in substantial compliance with District of Columbia housing regulations. *See* D.C.Code § 45–2518(a)(1)(A) (1990). The owners disputed both contentions, and additionally asserted that petitioner was barred by a previous RACD order from litigating the partnership (hence the exemption) issue, which could have been litigated in the prior proceeding.

Specifically, counsel for the owners asked the examiner to take "judicial" notice of a 1987 written decision by the RACD in case number TP 20,871, which had involved one (though not both) of the rent increases at issue here. The RACD in that case had upheld the owners' claim of exemption from the Act's coverage. Counsel argued here that petitioner, "while not a party to [the prior proceeding], was present at the time that this took place" and had "full opportunity to enter into the case"; so that, although the partnership issue had not been litigated at the hearing, preclusion principles barred its litigation now because she *could* have raised the issue at that time. In support of this defense, the owners' counsel offered as proof only "what's on the paper," that is, the RACD examiner's written decision of August 7, 1987. That document listed petitioner as one of two tenants who were "[p]resent at the hearing," but captioned the case: "Ms. Carol Wills, Tenant (Petitioner) v. Shirley Gray, Housing Provider (Respondent)." Petitioner was not otherwise named in the decision. She therefore objected to official notice being taken of a document which, on its face, described an action "between a different party and [the owners]." She argued that she could not be bound by a party's failure to raise an issue solely because of her presence as a non-party. The hearing examiner agreed to "take notice" of the written decision, saying that "the document will be addressed." Counsel for the owners had the last word, telling the examiner: "[Y]ou have the document. Give it whatever weight this Examiner feels is appropriate to give it and whatever decision that would be there."

In his written decision, the examiner proceeded directly to the merits, finding that the owners had forfeited their claim to exemption under the statute by owning and operating

---

**1.** Rental Accommodations and Conversion Division, District of Columbia Department of Consumer and Regulatory Affairs.

**2.** Act of 1985, D.C.Code § 45–2501 *et seq.* (1990).

the housing accommodation as a partnership, and that for several reasons (including non-compliance with the housing regulations) the rent increases violated the Act. He ordered partial relief in the form of a rent refund and rollback. On appeal to the RHC, the owners did not dispute the findings of violations, but challenged the examiner's failure expressly to address their argument of claim preclusion or *res judicata*, and his determination on the merits that they had operated the unit as a partnership rather than as "natural persons."

**B.**

At oral argument before the RHC, the owners' counsel for the first time referred to the actual tenant petitions filed in the earlier proceeding (TP 20,871), which he had discovered in his file. He handed them to a commissioner and asked the RHC to take official notice of them. Petitioner objected to the reviewing body's consideration of the petitions, which had not been part of the record before the examiner. Her counsel argued that "the defense of . . . preclusion is an affirmative defense, and the proponent of that doctrine has the burden of coming forward with evidence to support that proposition like any other affirmative proposition." Inasmuch as the owners had claimed and proven to the examiner only that petitioner was present at the 1985 hearing, the examiner was correct, counsel urged, in implicitly rejecting the owners' reliance on a doctrine— *res judicata*—which assumed identity of the parties in the prior proceeding.

The RHC, in its written decision, effectively agreed that the written ruling of the RACD of August 7, 1987, by itself, could not preclude consideration of the partnership issue on the merits. However, disregarding (or overlooking) petitioner's objection to consideration of the pleadings in TP 20,871, the RHC explained that "the parties agreed we would take judicial notice of TP 20,871 and counsel for the housing provider offered the Commission the decision and order in TP 20,871 *as well as copies of three tenant petitions* that had been filed in that case," including "the petition[ ] of Helen Johnson" (emphasis added). Moreover, the RHC went beyond these documents and took "official

notice of the original file in TP 20,871," concluding from the file as a whole that "it is perfectly clear that Ms. Johnson was . . . a party in that case." The RHC explained:

The originals of the three tenant petitions are in the file and each contains two RACD date stamps. One stamp is for January 17, 1986; the other is for March 30, 1987. There is also a memorandum dated March 30, 1987 from Sylvia F. Peters to Michael Scott, an employee of RACD in which Ms. Peters explains that she is resubmitting three tenant petitions which were filed the previous year, but which were returned by RACD to the petitioners by mistake. Each original petition has the RACD number TP 20,871 on the front. There are also, in the file notices of hearing which were sent to Ms. Johnson, Ms. Peters and Ms. Willis as parties to the case. In addition, there is a notice of appearance sheet which was filled out by all present at the hearing. One of the entries is by Charles A. Brady who identified himself as, "Attorney for Petitioners."[4] Ms. Willis, Ms. Johnson and Ms. Peters also signed the appearance sheet where each identified himself as "Tenant." Similarly, the hearing examiner in his decision and order in TP 20,871 identified Mr. Brady as Counsel for "petitioner's" [sic].

[4] We note especially the use of the plural form.

Because it was thus "clear to the Commission . . . that Ms. Johnson was a party to TP 20,871 and . . . was represented by counsel," the RHC applied settled principles of *res judicata* in holding that she was barred from relitigating an issue—operation of the premises as a partnership—which she could have raised, but failed to, in the 1985 proceeding involving the same cause.

**II.**

**A.**

■ We dispose of certain subsidiary issues at the threshold. First, there is no room for an argument that petitioner "agreed" to the RHC's taking official notice of the entire file, or even of the tenant petitions, in TP 20,871. She preserved clearly on the record her objection to the RHC doing so. Second, conversely, we reject petition-

er's argument that the owners' counsel, merely by stating his recollection to the hearing examiner that the owners were not a party to the action in TP 20,871, removed the issue of *res judicata* from the case by "judicial admission." *See McNamara v. Miller*, 106 U.S.App.D.C. 64, 68, 269 F.2d 511, 515 (1959) (to constitute judicial admission, statement must be *"by intention* an act of waiver relating to the opponent's proof of the fact, and not merely a statement of assertion or concession made for some independent purpose" (emphasis added; footnote omitted)); IX WIGMORE ON EVIDENCE § 2588 (Chadbourn ed. 1981) (admission must be an *"express waiver* made in court . . . conceding for the purposes of trial the truth of some alleged fact" (emphasis added)). Counsel's statement from memory in the course of argument did not rise to this level of formality.

Third, we reject petitioner's argument that the hearing examiner found "independent" grounds (chiefly, housing code violations) separate from either *res judicata* or the partnership issue on which to invalidate the rent increases, and that the owners did not appeal these rulings to the RHC. If in fact the owners operated the housing accommodation as "natural persons" (or if petitioner were precluded from relitigating that issue), then the Act's rent increase restrictions did not apply to them and the examiner could not properly order the relief he did.[3] Fourth, since petitioner does not contend otherwise, we assume for argument's sake that the partnership issue at the 1988 hearing was identical to the issue petitioner (assuming she was a party) could have raised at the 1985 hearing.[4] And finally, petitioner has not questioned either the RHC's authority to apply preclusion principles in proceedings under the Act, or its doctrinal understanding of *res judicata* (or claim preclusion) as "operat[ing] to prevent the same parties from relitigation of not only those matters actually litigated but also those which might have been litigated in the first proceeding." *Stutsman v. Kaiser Found. Health Plan of the Mid–Atlantic States, Inc.*, 546 A.2d 367, 369–70 (D.C. 1988) (citation and internal quotation marks omitted).

**B.**

What petitioner does challenge squarely is the RHC's application, on the record before it, of *res judicata* to reverse the hearing examiner's decision. She contends that the RHC, an appellate tribunal in reviewing decisions of the RACD, *see* D.C.Code § 45–2512(a)(2) (1990), improperly took official notice of the RACD file to overcome the patent insufficiency of the owners' proof at the hearing that she was a party to the first proceeding. We agree that the RHC's recourse to official notice was irregular and, for the reason to be stated shortly, was an improper basis for reversing the examiner's decision.

The DCAPA[5] provides that "[w]here any decision of . . . any agency in a contested case rests on official notice of a material fact not appearing in the evidence in the record, any party to such a case shall on timely request be afforded an opportunity to show the contrary." D.C.Code § 1–1509(b).[6] As related earlier, the only document relevant to TP 20,871 which the owners presented at the evidentiary hearing was the decision and order of the RACD. Yet the RHC in its decision took official notice of the entire agency file in that case—including the tenant petitions, a memorandum, hearing notices,

---

3. Contrary to petitioner's argument, by the express terms of D.C.Code § 45–2515(a)- (1990), § 45–2518(a)'s limitations on the right to impose a rent increase are made inapplicable to rental units that meet the exemption terms (including the "natural person" requirement) of § 45–2515(a).

4. We assume this is so even though the owners' entitlement to the 1987 rent increase necessarily could not have been litigated in 1985; *i.e.,* in *res judicata* parlance, the later increase was not "the same claim or demand between the same par-

ties" as the earlier increase. *Henderson v. Snider Bros., Inc.*, 439 A.2d 481, 485 (D.C.1981).

5. District of Columbia Administrative Procedure Act, D.C.Code §§ 1–1501 *et seq.* (1992).

6. Even before enactment of the DCAPA, it was well settled that an agency has the "inherent right to take judicial notice of certain facts not presented in evidence." *Aquino v. Knox*, 60 A.2d 237, 239 (D.C.1948).

and an appearance sheet—in concluding that petitioner had been a party to the proceeding. While her party status may indeed have been "perfectly clear" from these documents, petitioner was given no opportunity to show the contrary (at oral argument in this court, she continued to dispute their significance). This was contrary to § 1–1509(b) as well as to our decision in *Carey v. District Unemployment Compensation Bd.*, 304 A.2d 18, 20 (D.C.1973) (appeal board erred by taking official notice of agency record without "notify[ing] petitioner that the Board was invoking its prerogative to take official notice of a nonrecord fact"). Moreover, we have substantial doubt whether the RHC's appellate role properly included the elaborate taking of official notice it conducted here. In setting forth the documents and record entries which, in cumulation ("circumstantially," one might say), convinced it that petitioner had been a party to the earlier proceeding, the RHC acted very much like a finder of fact, contrary to the principle that "the Commission's function does not extend to making findings...." *Smith v. District of Columbia Rental Accommodations Comm'n*, 411 A.2d 612, 617 (D.C.1980).

■ There is, however, a more fundamental defect in the RHC's decision.[7] *Res judicata* is an affirmative defense that must be pleaded and established by the proponent. *Jonathan Woodner v. Adams*, 534 A.2d 292, 296 (D.C.1987); *Abramson v. Grady*, 234 A.2d 174, 175 (D.C.1967); *Block v. Wilson*, 54 A.2d 646, 648 (D.C.1947). The RHC's rules provide generally that, in hearings before the RACD, "[t]he proponent of a rule or order shall have the burden of establishing each finding of fact essential to the rule or order by a preponderance of evidence." 14 DCMR § 4003.1 (1991). As the RHC effectively conceded here, the owners failed to establish the defense of *res judicata* before the examiner because the sole evidence they offered on the point was the prior RACD decision, which did not prove by the necessary quantum of evidence that petitioner had been a party. To evaluate a claim of preclusion, the trier of

fact must "have before it the exhibits and records involved in the prior case...." *Block*, 54 A.2d at 648. Counsel for the owners failed to offer even the original tenant petitions, which he later discovered in his files. The examiner therefore had sound reason to reject the claim of *res judicata*.

14 DCMR § 3807.1 (1991) authorizes the RHC to reverse a final decision of the Rent Administrator

> which the Commission finds to be based upon arbitrary action, capricious action, or an abuse of discretion, or which contains conclusions of law not in accordance with the provisions of the Act, or findings of fact unsupported by substantial evidence on the record of the proceeding before the Rent Administrator.

None of these grounds for reversal is present. In particular, the examiner's implicit finding that the owners had failed to prove petitioner was a party in TP 20,871—far from being "unsupported by substantial evidence on the record"—was the only finding possible on the record made by the owners. The RHC thus had no basis for reversing that determination. To hold otherwise, on the strength of the OHR's taking "official notice" of the file in the prior case, would be to disregard the agency's express allocation of decisionmaking authority between the RACD and the RHC. *See also* 14 DCMR § 3807.5 (1991) ("The Commission shall not receive new evidence on appeal").

We accordingly reverse the decision of the RHC and remand to it for consideration of the owners' alternative grounds for reversal of the examiner's decision.

*So ordered.*

---

7. The irregularities identified above would, at most, entitle petitioner to an order directing the RHC to remand the issue of *res judicata* to the hearing examiner for reconsideration of it *by him* in light of the complete file in TP 20,871.